IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

JAMES ROBINSON,

                              Petitioner,

v.                                                      OPINION & ORDER

MARC CLEMENTS,                                          13-cv-116-jdp
Warden, Dodge Correctional Institution,[1]

                              Respondent.

Petitioner James Robinson is an inmate at the Dodge Correctional Institution, located in Waupun, Wisconsin. He seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his criminal convictions in the Wisconsin Circuit Court for Eau Claire County on one count of armed robbery, one count of possession of cocaine, one count of possession of drug paraphernalia, and one count of bail jumping. Petitioner asserts 13 claims for relief: five claims of prosecutorial misconduct and eight claims of ineffective assistance of trial counsel.

I will deny the petition for a writ of habeas corpus. Petitioner has procedurally defaulted two of his claims for relief by not raising them during the course of his direct appeal. For the 11 claims that remain, the state courts adequately addressed the merits by reasonably applying clearly established federal law to the facts of the case.

BACKGROUND

The state court's factual determinations are presumed correct for purposes of federal habeas review, unless petitioner rebuts those findings with clear and convincing evidence. 28

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Marc Clements has been automatically substituted as the respondent in this case.

U.S.C. § 2254(e)(1). Although petitioner disagrees with certain legal conclusions that the state courts made, he has not presented clear and convincing evidence to rebut the factual determinations in this case. Thus, in setting out the facts below, I rely on the state court records and the findings made in connection with petitioner's conviction, appeal, and postconviction proceedings.

In 2006, petitioner was charged in the Eau Claire County Court with eight counts of criminal conduct, including bail jumping, manufacturing and delivering cocaine, armed robbery, and possession of cocaine and drug paraphernalia. The criminal complaint charged that petitioner was involved in the armed robbery of a gas station in Eau Claire on November 15, 2006. Two witnesses observed the robbery, which occurred shortly before 3:00 am. The witnesses reported seeing a black male enter the gas station. He was approximately six feet tall and dressed in a "do-rag," black jacket, and black pants. Inside the gas station, the man pointed a silver semi-automatic pistol at the attendant. The witnesses then saw the man exit the gas station and run to an awaiting car. The witnesses drove up behind the car, made note of the license plate number, and called the police.

The police contacted the owner of the license plate, who informed them that Randy Kelley had taken the car to Eau Claire. Officers eventually apprehended Kelley, who admitted to giving petitioner and Josie Berenz a ride to a location about a block away from the gas station. Kelley explained that petitioner then got out of the car, dressed all in black and wearing a do-rag, and told Kelley to wait for him. Kelley thought that petitioner was going to purchase drugs, but when petitioner returned to the car he declared that he "got the white boy's money." Kelley drove petitioner and Berenz to a nearby residence. Later, petitioner and Berenz took a cab to Berenz's grandmother's house. Berenz corroborated Kelley's account of

2

the robbery, but she also added that she had seen petitioner with a silver pistol at various times during the night.

Later in the morning of November 15, police officers arrested Berenz and petitioner at Berenz's grandmother's house. Berenz disclosed to the officers that she and petitioner had used drugs the previous night, but she also stated that petitioner had sexually assaulted her. Berenz explained that petitioner had used a gun to intimidate her and had hidden the gun under a mattress. Acting on this information, police officers obtained and executed a search warrant for Berenz's grandmother's home. Underneath a mattress, they found a do-rag, a toy gun, and drug paraphernalia.

At petitioner's preliminary hearing, the court heard testimony from Kelley and from the gas station attendant, Samantha Osborne.[2] Petitioner attended the hearing dressed in an orange jail jumpsuit. Osborne testified that she was working at the gas station on November 15, and that she was robbed by a man dressed all in black and using a silver gun. Osborne admitted that the robber wore a black nylon or cloth over his face, but she asserted that she would nevertheless be able to recognize him. Osborne then identified petitioner as the perpetrator. Kelley took the stand and, after receiving an oral guarantee of immunity, recounted the events of November 15. Kelley testified that he drove petitioner to a location near the gas station and watched him get out of the car and walk toward the gas station. Petitioner returned a short time later and said, "I got that white boy's money." The state court found probable cause that petitioner had participated in an armed robbery, possessed cocaine and drug paraphernalia, and jumped bail. The case proceeded to a jury trial.

---

[2] An Eau Claire police officer also testified about two controlled buys that he supervised, during both of which he observed petitioner purchase cocaine. The testimony is not relevant to petitioner's petition.

Petitioner's habeas petition turns on what he perceives to be discrepancies in the testimonies of three witnesses: Osborne, Kelley, and Berenz. Osborne described the robbery at trial, and the prosecutor asked her if there was anything about petitioner that resembled the robber. Osborne responded: "Just his face, it just—it just sticks, I don't know, like I can't describe him exactly what he would look like. I don't know, all I remember is a black man. That's it." Dkt. 13-4, at 116.[3] According to petitioner, this testimony conflicted with Osborne being able to identify him at the preliminary hearing.

Kelley also described the events of November 15 at trial. During cross-examination, petitioner's counsel asked if Kelley had been charged with any crimes for his involvement in the robbery. Kelley testified—correctly—that he had not. But petitioner's counsel also asked if Kelley had received any sort of concession or deal in exchange for his testimony that day. Kelley responded that he had not (remember that Kelley received immunity for his testimony at the preliminary hearing).

As for Berenz, she testified that petitioner called for the cab that took the two of them to her house, and that he called the cab company a second time when the cab took longer than expected to arrive. But later during the trial, an employee from the cab company testified that the first call was from a woman, and only the second call was from a man.

A jury returned guilty verdicts on all four counts. On July 27, 2007, the state court sentenced petitioner to 10 years of initial confinement and 8 years of extended supervision. Petitioner timely appealed his conviction and sentence. But his appellate counsel certified that the appeal was frivolous, and he filed a no-merit report pursuant to *Anders v. California*, 386 U.S. 738 (1967), and Wis. Stat. § 809.32. Petitioner responded to the no-merit report.

---

[3] Pin cites in docket citations refer to page numbers in the ECF headers.

The Wisconsin Court of Appeals analyzed the issues that petitioner raised in response to the no-merit report, including whether: (1) there was a basis to challenge the right of police officers to seize evidence of the robbery when they executed a search warrant related to the alleged sexual assault; (2) petitioner's appellate and trial counsel were ineffective; and (3) state prosecutors knowingly used false testimony during trial. The court also independently reviewed whether: (1) there was a basis to challenge the sufficiency of the evidence presented against petitioner at trial; (2) petitioner knowingly and voluntarily waived his right to testify at trial; and (3) there was a basis to challenge petitioner's sentence. The court concluded that there was no arguable merit to any issue that petitioner could raise on appeal, and it summarily affirmed petitioner's conviction and sentence.

Petitioner sought review in the Wisconsin Supreme Court. He raised several issues, spread across two general categories: ineffective assistance of trial counsel and prosecutorial misconduct. The state supreme court denied review on July 21, 2010.

Petitioner returned to the state circuit court and filed a pro se motion for postconviction relief, arguing that his trial counsel was ineffective. The state court denied his motion, and petitioner appealed to the Wisconsin Court of Appeals, which summarily affirmed. Petitioner sought review in the Wisconsin Supreme Court, but he was once again denied review.

On February 19, 2013, petitioner petitioned this court for a writ of habeas corpus. The court ordered respondent to show cause why the writ should not issue, Dkt. 7, and the parties have now fully briefed the petition.

ANALYSIS

Federal district courts may grant writs of habeas corpus only when a state court's decision on the merits "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law . . . ; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Before applying this substantive standard to the claims that petitioner raises in this petition, I must determine whether petitioner "has exhausted the remedies available in the courts of the State." *Id.* § 2254(b). I cannot grant habeas relief on unexhausted claims that petitioner has procedurally defaulted, absent a showing of cause and prejudice or a fundamental miscarriage of justice. *Howard v. O'Sullivan*, 185 F.3d 721, 725-26 (7th Cir. 1999). A fundamental miscarriage of justice occurs where a petitioner shows that he is "actually innocent" of the charges against him or the punishment imposed. *See, e.g.*, *Dretke v. Haley*, 541 U.S. 386, 393 (2004).

Petitioner advances 13 claims for habeas review, split between 2 general categories. His prosecutorial misconduct claims are:

1. "I was denied the rights to a just and fair trial when the A.D.A. had decided to place the defendant in a[n] overly suggestive pretrial procedure." Dkt. 1, at 4.

2. "[T]he A.D.A. fail[ed] to inform the courts that [Samantha Osborn] had in fact committed perjury during the earlier pretrial procedure." *Id.* at 4-5.

3. "The A.D.A. had failed to correct the testimony of the State's key witness Ms. Samantha Osborn." *Id.* at 9.

4. "The Assistant District Attorney Ms. Meri Larson had failed to correct the testimony of the witness Mr. Randy Kelly when it had become

apparent that he had not told the truth on the stand and that his testimony had been false." *Id.* at 11.

5. "The A.D.A[.] Ms. Meri Larson had failed to correct the testimony of the witness Ms. Josie Berenz when it . . . became apparent that she had been untruthful in court." *Id.*

Petitioner's ineffective assistance of counsel claims are:

6. "Mr. Jay Heit[] . . . failed to file the proper suppression motion for the illegally tainted in court false identification." *Id.* at 12.

7. "Mr. Jay Heit . . . failed to impeach the witness Ms. Samantha Osborn with her tainted in court false identification of the defendant at the preliminary hearing." *Id.* at 13.

8. "Mr. Jay Heit . . . failed to impeach the witness Randy Kelly with his preliminary hearing testimony." *Id.* at 14.

9. "Mr. Jay Heit . . . failed to impeach the testimony of the witness Ms. Josie Berenz when it had become apparent that she had been untruthful to the court []when she had been asked by the assistant district attorney Ms. Meri Larson just who had made the phone call to the cab company." *Id.* at 15.

10. "Mr. Jay Heit . . . failed to properly investigate the evidence that had been in his procession during the initiation-outset of this case. . . . Mr. Jay Heit had failed [to] properly investigate and read the defendant['s] discovery and other transcripts before and/or during his trial." *Id.* at 17.

11. "Mr. Jay Heit . . . failed to put together a[n] alibi defense." *Id.*

12. "Mr. Jay Heit . . . failed to file an interlocutory appeal from the non final order binding the defendant over for trial." *Id.*

13. "Mr. Jay [Heit] . . . failed to argue before the court that the defendant had not been brought before a magistrate 'a judge' within the require[d] 48 hours after his arrest." *Id.* at 18.

I conclude that petitioner has procedurally defaulted two of his claims regarding ineffective assistance of counsel. And for the remaining claims, the last state court to address them did not render a decision that was contrary to clearly established federal law. I will

therefore deny petitioner's petition for a writ of habeas corpus. I will also deny petitioner a certificate of appealability.

## A. Procedural default

Petitioner failed to exhaust his state remedies on 2 of the 13 claims that he presents for federal habeas review, and these claims are procedurally defaulted. "[F]ederal claims must be fairly presented to the state courts. . . . [I]t is not sufficient merely that the federal habeas applicant has been through the state courts." *Picard v. Connor*, 404 U.S. 270, 275-76 (1971). The rule does not require "citing 'book and verse' of the Constitution . . . ; rather, [the] analysis focuses on whether the petitioner has offered the operative facts and controlling legal principles of his claim to the state courts." *Lieberman v. Thomas*, 505 F.3d 665, 670 (7th Cir. 2007).

To "fairly present" a federal claim, a habeas petitioner must "assert that claim throughout at least one complete round of state-court review, whether on direct appeal of his conviction or in post-conviction proceedings." *Richardson v. Lemke*, 745 F.3d 258, 268 (7th Cir.), *cert. denied sub nom.*, *Richardson v. Pfister*, 135 S. Ct. 380 (2014). This "requirement means that the petitioner must raise the issue at each and every level in the state court system, including levels at which review is discretionary rather than mandatory." *Id.*; *see also Lewis v. Sternes*, 390 F.3d 1019, 1025-26 (7th Cir. 2004).

In this case, petitioner pursued a no-merit direct appeal and a postconviction motion pursuant to Wis. Stat. § 974.06. For the postconviction proceedings, petitioner raised ineffective assistance of counsel claims in the circuit court. *See* Dkt. 13-2, at 91. But after the state court denied his postconviction motion, petitioner advanced only state law procedural

grounds for reversing that denial in the appellate courts. *See id.* at 274, 325.[4] Thus, for purposes of federal habeas review, petitioner's postconviction proceedings do not qualify as a "complete round" of state review for the ineffective assistance claims and prosecutorial misconduct claims. This means that I must look to petitioner's direct appeal to determine which claims he has procedurally defaulted.

Respondent contends that petitioner did not include claims 6, 7, 9, 11, 12, and 13 in the petition for review that he filed as part of his direct appeal. Dkt. 20, at 15-23. After reviewing petitioner's petition for review, I agree that he did not present two of these claims. Specifically, petitioner did not ask the Wisconsin Supreme Court to review whether his trial counsel was ineffective by failing to: (1) file an interlocutory appeal (claim 12); or (2) argue that 48 hours passed between petitioner's arrest and his initial appearance (claim 13). *See generally* Dkt. 13-3, at 158-99. But petitioner fairly presented the challenges to how his trial counsel allowed Osborne's pretrial identification (claim 6), failed to impeach Osborne and Berenz at trial (claims 7 and 9), and did not pursue an alibi defense (claim 11).

Petitioner contended in his petition for review that "[t]he Trial counsel was ineffective for allowing the improper in-court identification." Dkt. 13-3, at 160. Petitioner also argued that had it not been for the positive in-court identification at his preliminary hearing, there would not have been enough evidence to bind him over for trial. *Id.* at 165-66. Later, petitioner wrote that "had the attorney filed a motion to suppress the tainted in-court identification, would not the outcome had been different as a result[?]" *Id.* at 183. Likewise, petitioner discussed the contradictory evidence about who called the cab company and

---

[4] Petitioner discussed one of his ineffective assistance claims in his postconviction motion and in his subsequent petition for review to the Wisconsin Supreme Court. Dkt. 13-3, at 330-32. But petitioner did not present this discussion to the court of appeals. *Id.* at 273-83.

asserted that his trial counsel's "performance had been deficient for failing to meaningfully examine and cross examine witnesses, [with] earlier or inconsistent testimony." *Id.* at 176. With regard to his alibi defense, petitioner expressly indicated that his counsel failed to investigate "witness testimony that could have and/or would have [exonerated] the defendant because it would have put the defendant somewhere else during the time of the robbery." *Id.* at 177. Based on these arguments, I conclude that petitioner fairly presented the state courts with his ineffective assistance claims relating to Osborne, Kelley, and Berenz (claims 6, 7, and 9), and to an alibi defense (claim 11) because he "identif[ied] the specific acts or omissions of counsel that form[ed] the basis for his claim of ineffective assistance." *United States ex rel. Bell v. Pierson*, 267 F.3d 544, 555 (7th Cir. 2001) (internal citations and quotation marks omitted); *see also McNary v. Lemke*, 708 F.3d 905, 919 (7th Cir. 2013) ("This exhaustion requirement includes raising both the broad claim (here, ineffective assistance of counsel) but also the specific arguments and 'operative facts' within that claim.").

However, petitioner has procedurally defaulted claims 12 and 13 by failing to present them to the state courts through one complete round of review. "Failure to exhaust available state court remedies constitutes a procedural default." *Chambers v. McCaughtry*, 264 F.3d 732, 737 (7th Cir. 2001). Petitioner does identify a basis for excusing his default, and the defaulted claims do not establish his actual innocence of the charged crimes. *See Promotor v. Pollard*, 628 F.3d 878, 887 (7th Cir. 2010) ("[D]efault could be excused if he can establish cause and prejudice, or establish that the failure to consider the defaulted claim will result in a fundamental miscarriage of justice."). I therefore conclude that habeas review is not available for these claims.

**B. Review under 28 U.S.C. § 2254(d)**

I must apply a "highly deferential" standard of review to habeas claims that a state court has addressed on the merits. *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (citations and internal quotation marks omitted). Petitioner contends that the Wisconsin courts unreasonably applied federal law to his claims of prosecutorial misconduct and ineffective assistance of counsel. "For purposes of § 2254(d)(1), an *unreasonable* application of federal law is different from an *incorrect* application of federal law," and I may review the state courts' decision only for unreasonableness. *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (original emphasis) (citations and internal quotation marks omitted). In other words, petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

The relevant decision in this case is the Wisconsin Court of Appeals's opinion on petitioner's direct appeal. *See Garth v. Davis*, 470 F.3d 702, 710 (7th Cir. 2006) ("The relevant state court decision is that of the last state court to address the claim on the merits."). Petitioner pursued a no-merit direct appeal pursuant to *Anders*. Thus, in addition to the specific issues that petitioner presented for review, an attorney and three appellate judges independently reviewed the record to identify possible meritorious grounds for challenging petitioner's conviction and sentence. Despite this extensive review, the Wisconsin Court of Appeals held that there was "no arguable merit to any issue that could be raised on [petitioner's] appeal." Dkt. 13-3, at 152.[5] This was an adjudication on the merits. *See Richter*,

---

[5] Wisconsin's no-merit procedure complies with *Anders*'s requirements. *McCoy v. Court of Appeals of Wis., Dist. 1*, 486 U.S. 429, 444 (1988).

562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."). After reviewing the Wisconsin Court of Appeals's decision, I conclude that the state court did not unreasonably apply federal law to the facts of petitioner's case. I must therefore deny his petition for a writ of habeas corpus.

### 1. Prosecutorial misconduct

Petitioner contends that the state prosecutor committed misconduct by placing him in an "overly suggestive pretrial procedure" at the preliminary hearing and by failing to correct what petitioner perceives to be discrepancies in the testimony of three separate witnesses. The Wisconsin Court of Appeals addressed these issues on the merits. Dkt. 13-3, at 156. I conclude that the state court did not unreasonably apply federal law in rejecting petitioner's arguments regarding prosecutorial misconduct.

The government violates a criminal defendant's due process rights by knowingly using false testimony. But petitioner would be entitled to habeas relief only if he can "establish that: (1) the prosecution's case included perjured testimony; (2) the prosecution knew or should have known of the perjury; and (3) there is a reasonable likelihood that the false testimony could have affected the judgment of the jury." *Shasteen v. Saver*, 252 F.3d 929, 933 (7th Cir. 2001). "Even in cases of egregious prosecutorial misconduct, such as the knowing use of perjured testimony, [the Supreme Court has] required a new trial only when the tainted evidence was material to the case." *Smith v. Phillips,* 455 U.S. 209, 220 (1982). None of petitioner's claims of prosecutorial misconduct rise to this level.

12

Petitioner contends that it was misconduct for the prosecutor to place him in an "overly suggestive in court identification procedure with the Victim/Witness Ms. Samantha Osborn[e]" during the preliminary hearing. Dkt. 15, at 10. Yet Wisconsin law required petitioner to be present. *See* Wis. Stat. § 971.04. And as for appearing in an orange jumpsuit, neither petitioner nor his counsel objected. The Fourteenth Amendment protects criminal defendants from being compelled to stand trial before a jury while wearing identifiable prison clothing. *Whitman v. Bartow*, 434 F.3d 968, 970 (7th Cir. 2006) (citing *Estelle v. Williams*, 425 U.S. 501, 505 (1976)). But if a criminal defendant (or his counsel) fails to object, then he is not "compelled" to wear jail clothing and there is no constitutional violation. *Estelle*, 425 U.S. at 512-13. Because there was no objection, it was not misconduct for the prosecutor to continue with the preliminary hearing or to ask a witness to identify petitioner.

Even if petitioner's clothing placed him in a suggestive position, there was other evidence introduced during the preliminary hearing to support the state court's finding of probable cause. Kelley testified that he knew petitioner and drove him to a street behind the gas station on the night of the robbery. Dkt. 13-4, at 15. Kelley also testified that petitioner got out of the car, walked toward the gas station, and returned to the car awhile later and said "I got that white boy's money." *Id.* Under these circumstances, the Wisconsin Court of Appeals did not unreasonably apply federal law in rejecting petitioner's claim of prosecutorial misconduct based on his appearance at the preliminary hearing.

The rest of petitioner's prosecutorial misconduct claims arise from discrepancies in trial testimony. Petitioner identifies several discrepancies that he contends amounted to perjury, and so the prosecutor should have corrected them. The Wisconsin Court of Appeals disagreed, concluding that it was the jury's role to determine the credibility of the witnesses

13

and that the record did not offer any reason to believe that the prosecutor knowingly introduced false testimony. Dkt. 13-3, at 156. This conclusion resulted from a reasonable application of federal law.

The discrepancies that petitioner identifies were immaterial; no single inconsistency, nor all of them combined, would have changed the outcome in this case. For example, petitioner contends that Osborne committed perjury because she identified him at the preliminary hearing despite acknowledging that the robber had been wearing a nylon or cloth over his head, and because she could not articulate at trial what about petitioner resembled the man who had robbed the gas station. Osborne's trial testimony differed little, if at all, from her pretrial testimony. It was not perjury. Other witnesses placed petitioner at the scene of the robbery and other evidence demonstrated that petitioner committed the crime.

Petitioner also contends that the prosecutor failed to correct Kelley's perjured testimony. Kelley testified during cross-examination that he had not received any concession or deal in exchange for his trial testimony, despite the fact that the state court had granted him immunity in exchange for his testimony at the preliminary hearing. Even if Kelley did not answer the question correctly, the record as a whole does not suggest that the result would have been different. Petitioner's counsel impeached Kelley with eight felony convictions and evidence that Kelley had taken drugs on the night in question. But a different witness—Berenz—corroborated Kelley's testimony that petitioner had been in the car and had returned from the gas station with a gun, saying "I just took the white boys' money."

The final discrepancy that petitioner identifies is a conflict between Berenz's testimony and the testimony of the cab driver who picked up petitioner and Berenz the night

14

of the robbery. Berenz testified that petitioner called the cab company two times that night. But the cab driver testified that he received one call from a woman and another call from a man. Contrary to petitioner's contention, the conflicting testimony does not necessarily mean that Berenz lied under oath. The Wisconsin Court of Appeals correctly concluded that it was the jury's role to evaluate the testimony and resolve any conflicts.

"Mere inconsistencies in testimony by government witnesses do not establish the government's knowing use of false testimony. . . . The alleged perjured testimony must bear a direct relationship to the defendant's guilt or innocence." *Shasteen*, 252 F.3d at 933 (citations and internal quotation marks omitted); *see also Anderson v. United States*, 403 F.2d 451, 454 (7th Cir. 1968) ("Trivial conflicts in testimony do not constitute perjury." (citations and internal quotation marks omitted)). Yet "mere inconsistencies" are all that petitioner identifies. The state courts reasonably concluded that these discrepancies were immaterial. Thus, petitioner's prosecutorial misconduct claims do not entitle him to habeas relief.

### 2. Ineffective assistance of counsel

Petitioner contends that his trial counsel was ineffective because he failed to: (1) move to suppress Osborne's identification at the preliminary hearing; (2) impeach Osborne, Kelley, and Berenz at trial; (3) challenge the physical evidence; and (4) investigate petitioner's alibi defense. The Wisconsin Court of Appeals identified the controlling two-part test for reviewing these claims. Dkt. 13-3, at 155. First, petitioner needed to show deficient performance, meaning that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Second, petitioner had to demonstrate that the deficient

performance caused him prejudice, which requires "showing that counsel's errors were so serious as to deprive [petitioner] of a fair trial." *Id.*

"[B]ecause the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). This standard is "doubly deferential" on habeas corpus review. *Id*; *see also Richter*, 562 U.S. at 105 (emphasizing that the standards created by *Strickland* and § 2254(d) are "highly deferential," and "'doubly' so" when applied in tandem (citations omitted)). Thus, my task is not to independently perform the *Strickland* analysis to the facts of petitioner's case. Instead, I must determine whether the Wisconsin Court of Appeals reasonably applied controlling federal law. I conclude that it did.

Even if there had been a basis to suppress Osborne's identification at the preliminary hearing—presumably because petitioner was suggestively wearing an orange jumpsuit when she identified him—the other witnesses provided testimony that was sufficient to find probable cause. It would not have made any difference if the state court had suppressed Osborne's identification, and so petitioner was not prejudiced by it. Moreover, the Wisconsin Court of Appeals reasonably concluded that none of the testimony at trial relied on Osborne's pretrial identification. Dkt. 13-3, at 156.

As for counsel's failure to impeach the three witnesses at trial, petitioner overestimates the effect that his proposed points of impeachment would have had on the outcome. The discrepancies that petitioner would have liked for his counsel to press at trial are essentially the same discrepancies that petitioner identified in his prosecutorial misconduct claims. For substantially the same reasons that I have already given, the Wisconsin Court of Appeals

16

reasonably concluded that these discrepancies—and counsel's failure to develop them for impeachment purposes—were immaterial. Petitioner also contends that his counsel should have impeached Berenz with her allegations of sexual assault because those allegations never resulted in criminal charges. But as the state court explained, this was a reasonable trial strategy: "[c]ounsel could reasonably conclude that a claim of sexual assault would be prejudicial to [petitioner,]" rather than helpful. *Id.* at 155.

Petitioner's other claims of ineffective assistance concern his trial counsel's failure to have the physical evidence tested for fingerprints and DNA, as well as counsel's failure to establish an alibi defense. Given the other evidence linking petitioner to the crime, the Wisconsin Court of Appeals reasonably determined that counsel was not deficient for forgoing forensic testing. In fact, counsel may well have been worried that DNA or fingerprint evidence would have *implicated* petitioner, rather than prove his innocence. As for an alibi defense, the record is not clear that petitioner gave his counsel information about a possible alibi before trial. But even if counsel had the information before trial, the Wisconsin Court of Appeals reasonably determined that he was not deficient in choosing not to present it:

> [petitioner] wanted to argue that he could not have robbed the convenience store because he was trying to acquire drugs at that time. His alibi witnesses would have been drug dealers. Postconviction counsel indicates he attempted to contact the alibi witnesses but could not verify an alibi. In addition, Kelley's and Berenz's testimony placed [petitioner] near the store at the time of the robbery. Under these circumstances, counsel reasonably chose not to present an alibi defense that had no chance of succeeding and that would have further undermined [petitioner]'s character.

*Id.* at 155-56. This was a reasonable application of the *Strickland* standards.

The state courts reasonably applied federal law to petitioner's claims of ineffective assistance of trial counsel. These claims do not entitle him to habeas relief.

17

## C.  Certificate of appealability

Under Rule 11 of the Rules Governing Section 2254 Cases, I must issue or deny a certificate of appealability when entering a final order adverse to a petitioner. A certificate of appealability will not issue unless petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires him to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Although the rule allows me to ask the parties to submit arguments on whether a certificate should issue, it is not necessary to do so in this case.  For the reasons already stated, I conclude that petitioner has not made a showing, substantial or otherwise, that his conviction was obtained in violation of clearly established federal law as decided by the Supreme Court. Because reasonable jurists would not otherwise debate whether a different result was required, I will not issue petitioner a certificate of appealability.


ORDER

IT IS ORDERED that:

1. James Robinson's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is DENIED and this case is DISMISSED with prejudice. The clerk of court is directed to enter judgment for respondent and close this case.

2. A certificate of appealability is DENIED. If petitioner wishes, he may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22.

Entered March 29, 2016.

BY THE COURT:
/s/

_____

JAMES D. PETERSON
District Judge